UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 11-360-JBC

TIMOTHY WAYNE STAMPER,                                            PLAINTIFF,

V.                    MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                  DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Timothy Stamper's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 12, and deny Stamper's motion, R. 11, because substantial evidence supports the administrative decision.

At the date of the applications for DIB and for SSI, Stamper was a thirty-one-year-old man with a high school education who could communicate in English. AR 22. Prior to the alleged disability, he worked as a drywall applicator, heat seal operator/production laborer, tree trimmer, and forklift operator. *Id.* Stamper alleged disability beginning on July 12, 2007, following a motor vehicle accident that required surgical installation of steel rods in his femur and injuries to his left shoulder. AR 144. The claims for DIB and SSI were filed on September 21, 2007. AR 120, 124. The claims were denied initially on January 24, 2008, AR 65-68, and upon reconsideration on March 23, 2008, AR 76-78. After a hearing on

1

October 27, 2009, Administrative Law Judge ("ALJ") Gloria York determined that Stamper was not disabled under Section 1614(a)(3)(A) of the Social Security Act. AR 23. Under the traditional five-step analysis, *see Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994), the ALJ determined that Stamper had not engaged in substantial gainful activity since July 12, 2007, the alleged disability onset date, AR 19; that his status-post fracture of the right leg treated with rodding was a severe impairment, *Id.*; that he did not have an impairment, alone or in combination, that met or equaled one of the listed impairments, AR 20; that he had a residual functional capacity ("RFC") to perform the full range of light-level work but was precluded from returning to any of his past relevant work, *Id.*; and that based upon the application of Rule 202.21 of the Medical-Vocational Guidelines (the "grids"), a significant number of jobs existed in the national economy which he could perform, AR 22-23. The ALJ thus denied Stamper's claim for DIB and SSI on February 25, 2010. AR 23. The Appeals Council denied Stamper's request for review on September 8, 2011, AR 1-3, and he commenced this action.

    Stamper challenges the ALJ's ruling on the following grounds: (1) that the ALJ erred in failing to give controlling weight to the opinion of Dr. Ronald Dubin; (2) that the ALJ erred by failing to find that his past shoulder injury and mental problems constituted severe impairments; and (3) that the ALJ erred by relying upon the grids when the record revealed the existence of significant non-exertional limitations.

The ALJ gave appropriate weight to the opinion of Stamper's treating physician, Dr. Dubin. Dr. Dubin opined in September 2007 that Stamper would be disabled for at least one year. Stamper argues that Dr. Dubin's opinion should have been accorded superior if not controlling weight. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). However, Dr. Dubin indicated in his report that he was seeing Stamper for an evaluation rather than in the course of treatment and this was an isolated examination. AR 499. Dr. Dubin also noted that Stamper was under the care of another orthopedic surgeon at the University of Kentucky ("UK") Hospital. *Id*. Under these circumstances, Dr. Dubin would not be considered a treating physician. Although Dr. Dubin reported that Stamper would need to remain under the care of his orthopedic surgeon for the next twelve months, he did not restrict Stamper's work activities during this time frame. AR 500. The only restriction concerning work activities was an inability to return to his past work as a sheet rock installer. *Id*. The ALJ's findings were actually consistent with this opinion. Thus, the ALJ gave appropriate weight to Dr. Dubin's opinion.

Addressing Stamper's second issue, the ALJ properly determined that Stamper's history of shoulder injury was not a severe impairment. AR 19. Stamper reported first injuring his left shoulder in 1995 and subsequently experienced multiple shoulder dislocations. AR 42. In June 2005, he was seen at the UK Hospital where an evaluation revealed findings of a Hill-Sachs lesion on the superior lateral aspect of the humeral head, a Bankart lesion, and a possible

3

superior labrum from anterior to posterior ("SLAP") lesion. AR 380. A diagnosis of left shoulder instability was noted and Stamper underwent surgery for shoulder repair. *Id*. Long-term physical restrictions were not imposed by the hospital staff. AR 380-392. This was more than two years before Stamper's alleged onset date of July 12, 2007. In January 2008, Dr. Barry Burchett examined Stamper and reported that his shoulder was not tender, with no sign of redness, warmth, swelling or nodules. AR 583. The left shoulder had a full range of motion. AR 584. Dr. Amanda Lange reviewed the record in April 2008, and she did not identify any physical restrictions specifically related to his alleged shoulder impairment. AR 628-635. During the hearing, Stamper complained of continuing shoulder pain, but he had used only over-the-counter medication. AR 42. Under these circumstances, Stamper failed to demonstrate that he suffered from a severe shoulder impairment.

     The ALJ also properly determined that Stamper's mental problems did not constitute a severe impairment. AR 20. Stamper reported a history of special education during the hearing. AR 34. School records from the Lee County Board of Education revealed a performance IQ score of 84 in 1984, placing him in the low average range of intellectual functioning at that time. AR 545. In April 1994, cognitive functioning was noted to be in the low average range on an Individualized Education Program assessment. AR 561. Psychologist Melissa Couch examined Stamper in December 2009. Couch administered the Wechsler Adult Intelligence Scale-Fourth Edition and noted IQ scores in the low average to average range. AR

671-672. Based upon the interview, mental status examination and objective assessment, Couch concluded that Stamper did not suffer from a mental illness or severe emotional disorder. AR 673. A pain disorder with general medical and psychological factors and a reading disorder were diagnosed. *Id*. Couch indicated that his intellectual functioning was intact and prognosis good. *Id*. Couch reported that Stamper had no mental restrictions on a Medical Source Statement of Ability to do Work-Related Activities (Mental) Form. AR 675-677.

Psychologists Laura Cutler, AR 515-516, and Edward Stodola, AR 624-625, the non-examining medical reviewers, each reported a "moderately" limited ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods. To the extent that these opinions might suggest the existence of a "severe" mental impairment, the ALJ could rely upon Couch's opinion, who as an examining source, would have been entitled to more weight under the federal regulations. *See* 20 C.F.R. § 404.1527(c)(1). Therefore, the court finds no error on this issue.

Finally, in addressing Stamper's third issue, the ALJ properly relied upon the grids to determine that a significant number of jobs remained available to Stamper. Rote application of the grids is inappropriate when a claimant suffers from significant non-exertional limitations. *See Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The record included the testimony of VE Joyce Forrest who, in response to a hypothetical question including a restriction to light-level work along with a need to elevate the right lower extremity for fifteen minutes on an hourly

basis, stated that no jobs would be available. AR 55. However, no physician of record identified such a restriction, and thus it was not binding on the ALJ.

Because Stamper's mental condition was found not to be a "severe" impairment, the ALJ properly concluded that he did not suffer from any mental restrictions. With regard to his physical condition, following an automobile accident in July 2007, Stamper was treated at the UK Hospital for injuries related to a right femur fracture and underwent retrograde intramedullary femoral nailing of a distal femur fracture. AR 287, 290. The hospital staff did not impose long-term physical restrictions. AR 277-379, 383-492. Stamper was seen at the Marcum & Wallace Hospital in January 2008 with complaints of leg pain, at which time he was noted to be walking in a relaxed, strolling gait with no sign of a limp or other abnormality. AR 592, 595. In January 2008, Dr. Burchett reported that Stamper walked with a normal gait and did not require the use of a handheld assistive device. AR 582. He was comfortable both sitting and supine. AR 583. Physical examination of the legs revealed no tenderness, redness, warmth, swelling, fluid, laxity, or crepitus of the knees, ankles and feet. AR 584. Neurological examination revealed no sign of muscle atrophy, and sensory modalities were intact for light touch, pinprick and vibration. *Id*. Straight leg raising was negative both sitting and supine. *Id*. In October 2009, x-rays obtained at the UK Hospital revealed a healed right distal femoral diaphyseal fracture with no evidence of loosening or failure of the intramedullary nail and screw construct. AR 654. These reports do not suggest the existence of more severe physical restrictions than

those found by the ALJ. Dr. Lange, the medical reviewer, reported the existence of a number of postural and environmental restrictions, including an inability to more than occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to vibration and hazards. AR 628-635. This report was not binding on the ALJ under the administrative regulations. *See* 20 C.F.R. § 404.1527(f)(2)(I). Therefore, the ALJ properly relied upon grid Rule 202.21.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Stamper's motion for summary judgment, R. 11, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 12, is **GRANTED**.

The court will enter a separate judgment.

Signed on July 13, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY